The bill stated that complainant had a judgment, obtained against one William Shaw, in Camden Superior Court, for £ 2,097 11s. 2p.; that on 6 December, 1817, execution issued, and was immediately *Page 272 
(483) placed in the hand of the sheriff, and deputy sheriff Richard Pool indorsed thereon that it came to his hands 20 January, 1818, and the execution was in the hands of the sheriff or his deputy until the second Monday of the ensuing March, when it was returnable; that William Shaw was said at that time to be insolvent, but had previously intermarried with one Lydia Shannonhouse, who was the widow of James L. Shannonhouse, by whom she had two children, Elinor and Elizabeth, living at the time of her intermarriage with Shaw; that after such intermarriage, and shortly before the execution above spoken of issued, one of the children, Elizabeth, died, an infant intestate, whereby the wife of Shaw became entitled to a moiety of the personal estate of Elizabeth, consisting of negroes, money, bonds, etc.; that the sheriff, believing he might not lawfully levy the execution in his hands on this interest of Mrs. Shaw, returned the writ to March, 1818, indorsed "No property to be found"; that complainant issued another execution on the judgment on 13 April, 1818, and the officer indorsed thereon that it came to his hands on 15 April, 1818, and so remained until 7 July, 1818, and that he levied on the negroes 17 June, 1818; that at June Term, 1818, of Pasquotank County court the defendant Muse obtained letters of administration on the estate of Elizabeth Shannonhouse and obtained an order of court to divide the negroes of his intestate between Elinor Shannonhouse and Shaw, in right of his wife; that this division took place within the same week, and Muse procured an execution to issue from Pasquotank County court, at his own instance, as executor of one Boyd, and to be levied on the negroes by one Joshua Pool, who committed the negroes to prison and advertised them for sale; that on 17 July, 1818, Richard Pool and Joshua Pool, by virtue of the respective executions, met at the courthouse to sell the negroes, and both complainant and defendant attended; that Muse produced a mortgage for the negroes, dated 18 December, (484) 1817, to secure the debt for which his judgment was obtained and this execution had issued, and it was agreed between complainant and defendant, that each party should bid for the negroes, and that the money arising from the sale should be paid over to him to whom counsel selected by the parties should say the same belonged; that under this arrangement the negroes were bid off by Muse, and a return made on complainant's execution accordingly; that Muse was the purchaser, and that the money bid was not paid by the order of the plaintiff; that the counsel selected by the parties did not settle the question between them, and that Muse now refused to pay over the money, alleging that he had a perfect title by reason of his mortgage. *Page 273 
The answer, admitting Shaw's marriage with Mrs. Shannonhouse and Elizabeth's death, stated that at December Term, 1817, of Pasquotank court, commissioners were appointed to divide the property of Elizabeth, and on 1 January, 1818, they did so, when the negroes alluded to in the bill were allotted to Shaw, and at the same term the defendant was made administrator to Elizabeth. It further stated that the defendant, as executor of one Boyd, being interested in a judgment against Shaw, obtained from Shaw, on 18 December, 1817, an instrument conveying to the defendant, as executor of Boyd, all the interest of Shaw to an undivided share of the personal estate of Elizabeth, with a proviso to be void if Shaw should pay the judgment aforesaid; further, that the defendant was the executor of James L. Shannonhouse, father of Elizabeth, and that all the negroes of Shannonhouse, including those alluded to in the bill, had remained undivided, and under defendant's control as executor up to the time of the division on 1 January, 1818, and that William Shaw never had possession of any of them.
The defendant admitted his having taken out an execution on the said judgment, which was levied on the negroes on 17 and 18 June, 1818, and that he bid them off at the sale as charged; and (485) further, that the agreement between himself and the complainant, as to a reference of the question and the result of such agreement was truly stated in the bill, and submitted that his title to the negroes, both in law and equity, was good until the debt which they were conveyed to secure was discharged.
who presided below, dismissed the bill ordering each party to pay his own cost. Complainant appealed.